AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
Apr 18 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ carolinalopez    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. 23-mj-08249-LR
)
iPhone (Blue) )
Model: Unknown )
IMEI: Unknown )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent-Intelligence Miguel Flores incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent-Intelligence Miguel Flores
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

*Judge's signature*

Date:  04/17/2023

City and state:  El Centro, California    HON. LUPE RODRIGUEZ, JR., US MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

    iPhone (Blue)
    Model: Unknown
    IMEI: Unknown
    Seized from Azael ESPINO Jr.
    **(Target Device)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 4, 2023, up to and including April 4, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Devices;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Miguel Flores, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

>iPhone (Blue)
>Model: Unknown
>IMEI: Unknown
>Seized from Azael ESPINO Jr.
>**(Target Device)**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Azael ESPINO, Jr. (ESPINO), for illegally transporting aliens Agustin DIAZ-Lopez and Rosa DIAZ-Lopez (the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Device was seized from ESPINO on or about April 3, 2023, incident to his arrest. The Target Device is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

1

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since December 4, 2006, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning

accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

3

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On April 3, 2023, the Calexico Station's Highway Interdiction Team (HIT) was conducting surveillance in the Calexico Border Patrol Station's Area of Responsibility (AOR) approximately 18 miles east of Calexico, California. This area of the border region is open desert with spotted brush. In this area, the International Boundary Fence (IBF) that is approximately 15 feet tall. State Route 98 (SR 98) is approximately three miles north of the International Boundary Fence (IBF) and runs parallel to it. Interstate 8 (I-8) is approximately one mile north of SR 98 and approximately runs parallel to SR 98. This area is consistently used by smugglers to smuggle undocumented aliens into the United States.

4

11. At approximately 6:29 a.m., Border Patrol Agent (BPA) M. Reyes observed footprints leading away from the border. At approximately 10:40 a.m., BPA J. Bourque observed a white colored 2022 Subaru Forester Wagon bearing California license plates, traveling eastbound on I-8 and exited at SR 98 at the SR 98/I-8 eastern junction overpass. This area is commonly referred to as the East Y. At that time, Agent Bourque was wearing plain clothes and operating an unmarked Service vehicle. BPA Bourque observed the Subaru drive back westbound on SR 98 towards Calexico, California and relayed this information to his fellow HIT members. BPA Bourque followed the Subaru westbound on SR 98 until it reached the intersection of SR 98 and State Route 7 (SR 7). BPA Bourque observed the Subaru turn northbound on SR 7 and head towards Holtville, California. BPA Bourque relayed this information to his fellow HIT members and continued surveillance.

12. At approximately 11:30 a.m., BPA Bourque observed the Subaru again drive eastbound on I-8 and exit at the East Y. BPA Bourque observed the Subaru drive westbound on SR 98 towards Calexico, California. BPA Bourque began to follow the Subaru westbound on SR 98. BPA Bourque observed the Subaru drive westbound on SR 98 for approximately four miles before pulling to the shoulder on SR 98 near a yellow diamond road sign which read "Soft Shoulder." At that time, BPA Bourque observed two suspected illegal aliens run and quickly enter the Subaru. BPA Bourque observed the Subaru drive off westbound on SR 98. Approximately 11:40 a.m., BPA Bourque attempted a vehicle stop on the Subaru on SR 98 by engaging his Service vehicle's emergency lights and siren. The Subaru began to slow and pull to the shoulder of SR 98. BPA Bourque observed the two suspected undocumented aliens rise from their hiding positions in the rear seat of the Subaru and begin to move around a great deal.

13. Once the Subaru stopped, BPA Bourque pulled his Service vehicle in on an angle in front on the Subaru to prevent the vehicle from taking off. BPA Bourque exited his Service vehicle and began walking towards the Subaru. BPA Bourque observed the Subaru back up while the two suspected undocumented aliens exited the rear of the

vehicle and running away northbound from the vehicle. BPA Bourque approached the Subaru and the driver of the vehicle attempted to drive away by driving at BPA Bourque. BPA Bourque began yelling commands at the driver of the Subaru to stop the vehicle and the driver stopped. BPA Bourque began to approach the driver's side of the Subaru and the driver drove passed BPA Bourque nearly striking him. BPA Bourque observed the Subaru drive away quickly westbound on SR 98. BPA Bourque ran back to his Service vehicle and began to chase the Subaru. BPA Bourque pursued the Subaru, with his Service vehicle's emergency lights and siren activated, westbound on SR 98 until reaching the intersection of SR 98 and Bonesteele Road. BPA Bourque observed the Subaru turn northbound on Bonesteele Road. BPA Bourque observed and pursued the Subaru as it drove through the back roads north of SR 98 to flee. The Subaru was speeding more than 90 miles per hour. BPA Bourque continued to pursue the Subaru eastbound on Verde School Road until the Subaru lost control at a slight turn in the road, left the roadway and crashed in an agricultural field two fields east of Miller Road.

14. BPA Bourque observed the driver of the Subaru, later identified as Azael ESPINO Jr, exit the Subaru, walk a few yards south into the agricultural field, drop to his knees, and place his hands behind his head. BPA Bourque walked up to ESPINO and placed him in handcuffs. BPA Bourque asked ESPINO if he was "alright," and ESPINO stated "yeah." Agent Bourque walked ESPINO back to the roadway and sat him down. BPA Bourque asked ESPINO what his citizenship was, and ESPINO stated "U.S. citizen." BPA Bourque stayed with ESPINO until BPA A. Mills arrived. BPA Bourque handed off custody of ESPINO to Agent Mills. BPA Bourque drove back to the location where he observed the two suspected illegal aliens exit the Subaru and abscond. BPA Bourque observed footprints in the dirt/sand in the area where the Subaru had dropped off the two suspected illegal aliens. BPA Bourque observed the footprints head north away from SR 98 into the brush. BPA Bourque tracked the footprints and after a few minutes BPA Bourque found the two suspected illegal aliens hiding in the brush. Agent Bourque apprehended both subjects, later identified as Agustin DIAZ-Lopez and Rosa DIAZ-Lopez

and it was later determined that the two suspected illegal aliens were Mexican citizens illegally present in the United States. ESPINO and the two smuggled aliens were transported to the Calexico Border Patrol Station for further processing and interviews.

15. On April 3, 2023, at approximately 1:55 p.m., BPA Davalos and BPA A. Pena conducted a video sworn statement on Agustin DIAZ-Lopez, regarding his illegal entry into the United States. DIAZ acknowledged that his statement was being recorded and was willing to speak about what happened on today's date. DIAZ stated that his true and correct name is Agustin DIAZ-Lopez and that he was born in Chiapas, Mexico. DIAZ stated that he is a citizen of Mexico. DIAZ stated that he does not possess any immigration documents that would allow him to work or reside in the United States legally. DIAZ stated that he currently lives in Chiapas, Mexico. DIAZ stated he traveled to Mexicali, Mexico with the intent to be smuggled into the United States. DIAZ stated he made arraignments to be smuggled to the United States illegally for a $200,000 Mexican Pesos.

16. DIAZ stated that after crossing the IBF, he and his sister (Rosa DIAZ-Lopez) waved down a white colored vehicle that picked them up (2022 Subaru Forester Wagon). DIAZ stated that he and his sister both boarded the back seat of the vehicle. DIAZ stated that the driver told them to get in. DIAZ stated that moments later they were pulled over by the Border Patrol and the driver told them to "get out, they are going to detain us". DIAZ stated that they did as they were told and ran into the brush near the highway. DIAZ stated that they waited a short while until they were apprehended by the Border Patrol. DIAZ was presented with a six-pack photo line-up, and he was able to identify photo #6 as the driver of the vehicle he was in. Photo #6 represents the principal, Azael Jr. ESPINO. At approximately 1:49 p.m., the video sworn statement concluded.

17. On April 3, 2023, at approximately 2:10 p.m., BPA Davalos and BPA Pena conducted a video sworn statement on Rosa DIAZ-Lopez, regarding her illegal entry into the United States. DIAZ acknowledged that her statement was being recorded and was willing to speak about what happened on today's date. DIAZ stated that her true and correct name is Rosa DIAZ-Lopez and that she was born in Chiapas, Mexico. DIAZ stated that

she is a citizen of Mexico. DIAZ stated that she does not possess any immigration documents that would allow her to work or reside in the United States legally. DIAZ stated that she currently lives in Chiapas, Mexico. DIAZ stated she traveled to Mexicali, Mexico with the intent to be smuggled into the United States. DIAZ stated she made arraignments to be smuggled to the United States illegally in Mexicali for an unknown amount. DIAZ stated that they waited approximately 20 minutes after jumping the IBF before a white vehicle arrived (2022 Subaru Forester Wagon). DIAZ stated that she and her brother both boarded the back seat of the vehicle. DIAZ stated that the driver told them to get in. DIAZ stated that moments later they were pulled over. DIAZ stated that when the vehicle stopped the ran out and into the brush near the highway. DIAZ stated that they waited a short while until they were apprehended by the Border Patrol. DIAZ was presented with a six-pack photo line-up, and she was not able to identify any of the pictures. At approximately 2:20 p.m., the video sworn statement concluded.

18.     During the arrest of ESPINO, Agents located a blue iPhone (the Target Device) on the floorboard of the Subaru. The Target Device was discovered between the driver's door and the driver seat. ESPINO later claimed ownership of the Target Device.

19.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Device for data beginning on March 4, 2023, up to and including April 4, 2023, the day after the arrest of ESPINO.

## METHODOLOGY

20.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone, and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

23. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that ESPINO used the Target Device to facilitate the offense of alien smuggling. The Target Device likely was used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by ESPINO, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Miguel Flores
Border Patrol Agent-Intelligence
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 17th day of April, 2023.

_____ 9:04 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

    iPhone (Blue)
    Model: Unknown
    IMEI: Unknown
    Seized from Azael ESPINO Jr.
    **(Target Device)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 4, 2023, up to and including April 4, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Devices;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.